GOULD STORAGE BATTERY CO. v. ELECTRIC STORAGE BATTERY CO.

(Circuit Court of Appeals, Second Circuit. November 13, 1911.)

No. 84.

1. PATENTS (§ 45*)—NOVELTY—PRESUMPTION.

The presumption is that two patents granted to the same inventor do not cover the same invention, and the burden rests on one asserting the contrary to establish his contention by cogent proof, especially where the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

patents were issued within a month of each other on applications pending at the same time.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 51–53; Dec. Dig. § 45.*

Presumptions and burden of proof of invention, see note to American Sulphite Pulp Co. v. De Grassee P. Co., 87 C. C. A. 264.]

**2.** PATENTS (§ 202*)—ASSIGNMENT—OPERATION.
A court cannot split up the title to a patent, and a complainant is not entitled to a decree requiring a patent to be transferred to him, where it contains claims to which he has established no right, even though he may be entitled to the broad invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 282; Dec. Dig. § 202.*]

**3.** PATENTS (§ 202*)—ASSIGNMENT—SECOND PATENT FOR SAME INVENTION.
Evidence *held* insufficient to establish that the Madden patent, No. 570,224, for a machine for making grids for secondary battery plates, is for the same invention as patent No. 572,363, issued to the same inventor on a prior application, so that it passed by an assignment of the latter.

[Ed. Note.—For other cases, see Patents. Cent. Dig. § 282; Dec. Dig. § 202.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Gould Storage Battery Company against the Electric Storage Battery Company. Decree for defendant, and complainant appeals. Affirmed.

The decree of the Circuit Court for the Southern District of New York dismissed the bill in an action by the Gould Storage Battery Company, complainant, to compel the Electric Storage Battery Company, defendant, to transfer to the complainant letters patent No. 570,224 granted to A. F. Madden for a machine for making grids for secondary battery plates.

The following is the opinion of Hazel, District Judge, in the court below:

The complainant corporation has brought this suit in equity to compel an assignment by the defendant of letters patent No. 570,224, dated October 27, 1896. for making grids for secondary battery plates, to enjoin the transfer of said patent to any other person than the complainant, and to enjoin infringement thereof by the defendant. The patent was issued to the defendant, Electric Storage Battery Company, as assignee of Albert F. Madden, the inventor. There was issued by the Commissioner of Patents on December 1, 1896. on application dated November 19, 1895, to Madden, as assignor of Abraham Van Winkle and Rufus N. Chamberlain. another patent, No. 572,-363, which was also for a machine for making battery grids, and which patent the complainant, who is now the owner thereof, claims embodied the broad invention described in the defendant's patent of earlier date. The theory of the complainant is that by virtue of the assignment to Van Winkle and Chamberlain, of which the defendant is claimed to have had constructive notice, the latter became equitably the owners of the first patent, and that the defendant, by its later assignment from the inventor, did not in fact obtain good title to patent No. 570,224.

The material facts and circumstances are somewhat unusual, and a brief statement of them in chronological sequence will indicate the contentions of the opposing parties and their relations to one another. Prior to the year

1893, the inventor, Madden, was employed by defendant's predecessor and engaged in making and testing storage battery grids, and a number of patents for casting grids and battery plates were invented by him prior to the inventions in suit. On June 10, 1895, after such employment had ceased, Madden agreed in writing with Van Winkle and Chamberlain that he would make for them a machine for spinning grooves and ribs in a battery plate according to a lead cylinder sample furnished by Madden, that he would apply for a patent thereon, and in consideration of the payment to him of $350 he would assign the same to Van Winkle and Chamberlain. The machine was completed and delivered in the following month to Van Winkle and Chamberlain, who paid the agreed purchase price, and in accordance with the arrangement an application and specification for a patent for said machine and its process together with an assignment of the invention were prepared and executed by Madden. Such assignment before the issuance of the patent was legal and proper. Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504. For some unexplained reason the application and specification was not filed in the Patent Office, nor was the assignment to Van Winkle and Chamberlain recorded until November 19, 1895, more than three months from the date of the assignment which contained the request that the letters patent should be issued to the assignee. Van Winkle subsequently assigned his interest in the patent to Chamberlain, who in turn assigned to one Gould, and the latter transferred all his right, title, and interest in the patent to the complainant. The record further shows that in about November, 1895, one Lloyd, acting for the defendant, negotiated with Madden for the manufacture and sale of a machine for producing leaves in a leaden surface under pressure by means of a series of discs, a machine of the same general character as that described in patent No. 572,363, and it was agreed that the invention for such machine should be assigned to the defendant, Electric Storage Battery Company. On January 11, 1896, the application and specification for said machine was filed in the Patent Office, and on January 27, 1896, Madden executed and delivered an assignment to the defendant, wherein in substance it was recited that he conveyed all the right, title, and interest which he had in said invention and patent, and requested that the patent be issued to the defendant. This assignment was recorded on April 23, 1896, and the patent was granted on October 27, 1896, five weeks before the issuance of the patent to complainant's predecessor on the earlier assignment to Van Winkle and Chamberlain, and without knowledge on the part of the assignees or their successors of the pendency of any other application for patent by Madden for machines of the type under consideration. On January 5, 1905, the defendant brought suit in this district, charging the complainant with infringement of patent No. 570,224; and afterwards a similar action for infringement was begun in the district of New Jersey by the complainant against the defendant, charging infringement of patent No. 572,363. The two suits are at issue, and evidence has been taken in both; but the parties await the outcome of this action before bringing such controversies for infringement to hearing.

The complainant claims that the intendment of the parties to the assignment of the invention dated July 30, 1895, was that the patent, when issued, should cover the invention broadly, and, indeed, asserts that claim 2 broadly includes Madden's basic invention. On the other hand, the defendant contends that the second patent and claims are specific, and limited to a machine for making grids in which the cutters are revolved at a higher rate of speed than the blanks or cutting surfaces. The defendant also contends that it did not have notice, either actual or constructive, of the prior assignment of the invention and patent to complainant's predecessors; that Lloyd acted for himself, and not in the interest of the defendant; that it purchased the machine described from Lloyd in good faith and without notice of any outstanding assignable interest. If either defense prevails, the complainant cannot recover. The evidential facts sufficiently show that Lloyd, although not having statutory or actual notice of the prior assignment, was nevertheless, by and on account of the information imparted to him by Madden, put upon inquiry as to the interest of complainant's predecessors in the invention. The evidence clearly shows that he acted, not for himself, or in

his own interest, but as agent for the defendant and in its interest. The question of adequate notice and whether the defendant acquired title illegally is not of paramount importance, however, in view of the conclusion I have reached regarding the scope of complainant's patent and the existing differences in the two grid-making machines.

Claims 1 and 2 of complainant's patent read as follows:

"1. A battery-grid having shelves or partitions and a suitable supporting-frame formed of an integral piece of lead, the shelves or partitions being of uniform density throughout and of different density from the supporting-frame, substantially as set forth.

"2. In a machine for making battery-grids, the combination of a pair of spinning-rolls provided with parallel spinning knives, means for rotating the spinning-rolls in proper relation to each other, means for supporting a blank plate, and means for feeding the plate-support between the rolls independent of the rolls, substantially as set forth."

Complainant contends that the construction of such claims is of material importance, and controls the question of whether complainant's patent broadly includes the subject-matter of the defendant's patent. The burden of proof rests upon the complainant to show that the two patents are for the same machines, and that the above-quoted claims are of such breadth as to cover the machine described in defendant's patent. This burden is not sustained. The testimony of Lloyd indicates that during the pending negotiations for the purchase of the second machine Madden claimed that he had not sold to Van Winkle and Chamberlain his basic invention, and that his assignment to them merely covered a grid machine of special construction. Madden, it is true, swears to the contrary; but his attitude in the entire transaction and the suspicious circumstances surrounding it preclude me from giving great weight to his testimony or accepting it as credible in preference to that of Lloyd. Nor do I think that the testimony of the witness Morgan, called to corroborate Madden as to a conversation descriptive of the machine held more than 15 years ago, has probative value. Irrespective of any existing discrepancies in such testimony I think it would be necessary to look to the patents themselves, as well as the conduct of the parties, to ascertain the proper construction and scope of the invention. Railroad Co. v. Trimble, 10 Wall. 367, 19 L. Ed. 948.

I am persuaded, however, by the evidence, that defendant's patented machine is essentially different from that of complainant. They were designed for the same purpose, but they differ so much in form that no presumption arises that the patent for the earlier machine broadly covers the later machine. Indeed, the grant of said patents for grid-making machines on application of the same inventor, and pending in the Patent Office at the same time for allowance, raises a presumption that the machines were patentably different. D'Arcy v. Staples & Hanford Co., 161 Fed. 733, 88 C. C. A. 606. This rule has especial application, as it is well understood that a prior existing patent estops a second patent for the same thing. The defendant's expert witness Brown swears that the patents are different in important particulars. His testimony, pointing out the existing differences, may be quoted:

"(1) In No. 572,363, each of the spinning rolls always rotates in the same direction; in No. 570,224, each cutter shaft with its cutter rocks or oscillates back and forth.

"(2) In No. 572,363, the spinning rolls rotate at a materially greater surface speed than the travel of the lead blank; in No. 570,224, the cutters rotate at substantially the same surface speed as the travel of the lead blank.

"(3) In No. 572,363, the peripheries of the spinning or cutting discs are continuous throughout and concentric with the axis of rotation; in No. 570,-224, the cutters are notched at their peripheries, which would be an impossible construction in No. 572,363, since such notched cutters, if rotated always in one direction, and at a materially greater surface speed than the lead blank, would act as saws to saw out the grooves by displacement and removal of the lead.

"(4) In No. 572,363, the spinning rolls are pressed toward the lead blank with a yielding pressure; in No. 570,224, the cutters are gradually, slowly, and positively fed toward each other by a power-actuated screw feed.

"(5) In No. 572,363, the construction is such that the lead blank is heated as an intended factor in the operation; in No. 570,224, heat is not described as a factor, and in the actual process of the Electric Storage Battery Company heating is prevented, and the lead blank is kept cold by a continuous application of cold water.

"(6) In No. 572,363, in order to get transverse ribs in a battery-grid, the spinning rolls are jumped apart and brought together again during the reciprocation of the lead blank; in No. 570,224, transverse ribs are formed by notching the oscillating cutters."

The defendant's expert witnesses Byrnes and Winter also point out similar differences in the products of the two patents. In their opinion the first patent was for a grid-rolling machine with so-called "shelves or partitions of different density from the supporting frame," while by the operation of the second a spun-metal grid of identical density with the supporting frame is produced, and that such patents are separate and distinct. It is true that a broad construction of claim 2 would seem to indicate that it embodied defendant's patented machine, yet considering the differences in the two machines, as pointed out hereinabove, and the different results attained in their operation, a question of grave doubt is raised in my mind on the present record as to whether a broad construction should be given such claim. As this question will doubtless be called to the attention of this court and with reference to the prior state of the art in the infringement suit pending in this district, the scope of claim 2 need not now be determined.

The evidence fairly indicates that Madden reserved the right to make improvements in the machine and that he declined to expand his assignment in this respect. It is practically conceded that the patent issued to the defendant embodies more features and claims than are included in the machine of patent No. 572,363. In view of this concession, it is difficult to conceive how this court can compel the defendant to assign its patent, which not only embodies complainant's invention, but other inventions relating to the same subject-matter. There can be no separation or division of the claims, and in my opinion the defendant cannot be compelled to assign a portion of its invention, so as to secure to the complainant that which it claims it would have had if the first patent had not been issued.

Without deeming it necessary to consider the defense of laches, I conclude that the evidence to support the claim of the complainant is not of such cogency as to warrant giving the extraordinary relief demanded in the bill.

The bill is without equity, and therefore is dismissed, with costs.

William Houston Kenyon (Kenyon & Kenyon, on the brief), for appellant.

Augustus B. Stoughton and George S. Graham, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The complainant insists that letters patent No. 570,224 granted to Albert F. Madden, October 27, 1896, assigned to the Electric Storage Battery Company, the defendant, belongs to it, together with the invention and improvements covered by the ten claims thereof. A decree is asked compelling the owner of the patent to assign it to the complainant and for other relief.

The patent relates to a new and useful machine for making grids for secondary battery plates. The specification says:

"The principal objects of my present invention are, first, to provide a comparatively simple and effective machine for expeditiously and comparatively inexpensively tranforming, reducing, and preparing the lead of blanks to a different state well suited to fulfill storage-battery requirements while shaping or manufacturing them, and, second, to so construct, combine and

arrange the various parts of the machine as that the same is adapted for the production of grids of various sizes and kinds; and to these ends, my invention consists of the improvements hereinafter described and claimed. The mode of operation of a machine embodying features of my invention is such that portions of a lead blank held against edgewise expansion are gradually displaced, for example, by repeatedly embedding devices into it, thereby increasing its density and squeezing up face-hardened bars, ribs, or the like above the original face of the plate."

The application for this patent was filed January 11, 1896. On November 19, 1895, Madden applied for another patent for improvements in battery grids and machines for producing the same, and on December 1, 1896, a patent, No. 572,363, issued thereon to Van Winkle and Chamberlain, which patent is now owned by the complainant. The specification states:

"The object of my invention, therefore, is to make a secondary-battery plate or grid with shelves or partitions which will have a molecular structure of uniform density throughout, and at the same time offer the largest possible surface for chemical or electrochemical action, and will be cheap to manufacture. To this end I first produce a lead blank of any suitable or desired shape and subject it to the spinning action of the rollers provided with outing-disks, which I will hereinafter fully describe. By subjecting the plate of lead or other flexible material adapted for secondary-batteries to the spinning action of the series of metallic disks, the molecular structure and density of the shelves or partitions are rendered absolutely uniform throughout, while the integral supporting-frame surrounding the shelves is of a different density (less dense than the spun shelves), and I thereby secure a supporting structure or grid than can be relied upon when subjected to the chemical or electrochemical action for producing the active material."

The complainant, therefore, owns a patent granted to Madden, which was applied for November 19, 1895, and issued December 1, 1896, and the defendant owns a patent granted to Madden which was applied for January 11, 1896, and issued October 27, 1896. The complainant's patent was, therefore, applied for about two months before the defendant's patent and was issued about one month thereafter.

We agree with Judge Hazel in thinking that the relief demanded by the complainant cannot be granted and concur generally in his reasoning which it is unnecessary to repeat. We will briefly state our own conclusions:

[1] First.—The bill demands extraordinary relief, viz., that the legal owner of a patent assign it to the complainant, who is the owner of another patent granted to the same inventor upon an earlier application, on the ground that the two patents cover the same invention, which invention was transferred to the complainant. The presumption is that the two patents do not cover the same invention, and the burden is heavily on him who asserts to the contrary. It would require cogent proof to convince the court that the Patent Office would, within a month, issue two patents for the same invention to the same inventor. Such proof has not been presented.

[2] Second.—The complainant's patent contains 12 claims and the defendant's patent 10 claims. A cursory glance at these claims demonstrates the proposition that many of the claims of the latter patent cover improvements and combinations not found in the former and

not conveyed to complainant. And yet the relief demanded is that all these claims shall be transferred to the complainant. The defendant's patent cannot be split up; it must be transferred in its entirety. If it be so transferred, the complainant will become the owner of claims to which it has no shadow of title. Conceding, for the moment, the rectitude of the contention that the broad invention belongs to the complainant, it is, nevertheless manifest, that such an assignment transferring to complainant claims for combinations and improvements which do not belong to it would work a manifest injustice.

[3] Third.—It is undoubtedly true that by the assignment of July 30, 1895, Madden transferred to the complainant's assignors "the full and exclusive right to the said invention—viz., certain new and useful improvements in battery grid spinning machines, process and product —as fully set forth and described in the specification executed by me preparatory to obtaining letters patent of the United States therefor, and the full and exclusive right to any and all reissues, extensions or divisional applications thereof." This assignment was not recorded until November 19, 1895, more than three months from its date. It may be conceded that all that the assignment mentioned was transferred, but the concession does not materially assist the solution of the controversy for the reason that the dispute arises as to what the "said invention" was. It surely did not cover other inventions then existing or thereafter to be made by Madden. The defendant contends that the "said invention" thus assigned related to improvements in battery grids of a peculiar formation and to the machine for producing the same. The machine was known as a "spinning" machine which produced grids by the well-known spinning operation, "spinning-rolls" being elements of ten of the twelve claims. The opinion below points out six instances of dissimilarity between the defendant's machine and the machine which the complainant secured from Madden, with corresponding differences in the resulting product. The machine which the complainant bought is a grid spinning machine producing a spun grid; the defendant's machine produces a grid by the rolling process. There is evidence to support the contention that Madden did not intend to sell and did not sell anything but the specific invention of the spinning machine and its product. That he did not intend to part with other inventions which he had conceived or might conceive thereafter is manifest. There is also evidence to support the proposition that the invention which he sold to the defendant was for a machine, and improvements thereon, which produced a different grid by a different method from that sold to the complainant. It is not necessary for us to decide this question definitely, it is enough that there is too much doubt as to the correctness of the complainant's contention to justify us in destroying in toto the defendant's title.

Fourth.—Each party has sued the other for infringement and we see no reason to doubt that the complainant can, if it proves its contention, obtain adequate relief in the action pending in New Jersey. Indeed, both parties can obtain relief commensurate with their respective rights. In the complainant's action relief is demanded that the defendant's patent, No. 570,224, be repealed as an interfering patent.

To grant the drastic decree now asked for would prejudge these actions and leave the defendant defenseless with neither sword nor shield. This unfortunate controversy could have been avoided had the inventor been less disingenuous and had the parties observed with greater care some of the precepts of the Decalogue. Neither party is blameless, but we are unable to say that the proof preponderates so strongly in favor of the complainant as to justify us in granting the extraordinary relief demanded.

The decree is affirmed, with costs.